NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**MICHELLE A. FERRELL,**
*Petitioner*

**v.**

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**
*Respondent*

———————————

2022-1487

———————————

Petition for review of the Merit Systems Protection Board in No. DA-1221-21-0228-W-1.

———————————

Decided: February 9, 2023

———————————

MICHELLE FERRELL, N. Richland Hills, TX, pro se.

AUGUSTUS JEFFREY GOLDEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI.

———————————

Before MOORE, *Chief Judge*, CLEVENGER and DYK, *Circuit Judges*.

PER CURIAM.

Michelle A. Ferrell seeks review of the final decision of the Merit Systems Protection Board (Board or MSPB) denying her request for corrective action under the Whistleblower Protection Act of 1989 (WPA) and the Whistleblower Protection Enhancement Act of 2012 (WPEA). *Ferrell v. Dep't of Hous. & Urb. Dev.*, No. DA-1221-21-0228-W-1, 2021 WL 6107603 (M.S.P.B. Dec. 20, 2021) (*Board Decision*) (SAppx. 7-50).[1]  For the reasons set forth below, we *affirm* the Board's final decision.

## BACKGROUND

Ms. Ferrell was employed as an Equal Opportunity Specialist by the Department of Housing and Urban Development (HUD) in the Intake Branch of its Office of Fair Housing and Equal Opportunity Region 6 office in Fort Worth, Texas. SAppx. 8.  Ms. Ferrell's job required her to receive and process complaints made from individuals who claimed their housing rights were violated. *Id.*  She had approximately eighteen years of service when she retired from HUD on January 31, 2020. *Id.*

In approximately May 2019, Kimone Paley joined HUD, becoming Ms. Ferrell's first-line supervisor, and remained as such until Ms. Ferrell's retirement. SAppx. 8-9. There was immediate friction between Ms. Paley and Ms. Ferrell. SAppx. 9.  During Ms. Paley's first day, at an all-

---

[1]   "SAppx." citations herein refer to the appendix filed concurrently with Respondent's brief.  Additionally, because the reported version of the Board's decision is not paginated, citations herein are to the version of the Board decision included in the appendix—e.g., *Board Decision* at 1 can be found at SAppx. 7.

hands meeting to introduce Ms. Paley, Ms. Ferrell stated she had been passed over for Ms. Paley's position. *Id.* Later that day, Ms. Paley testified that Ms. Ferrell "accosted" her by physically directing her into a private conference room where Ms. Ferrell stated Ms. Paley had taken her job, and Ms. Paley should not be offended when Ms. Ferrell filed an Equal Employment Opportunity (EEO) complaint against her. *Id.*

Moreover, Ms. Paley testified she observed problematic conduct by Ms. Ferrell soon after Ms. Paley joined HUD. SAppx. 10. This included Ms. Ferrell (1) falsifying dates on documents to make it appear she met deadlines for the completion of work; (2) purposefully refusing to comply with instructions on how to submit work in an appropriate format; (3) falsely claiming not to know how to operate Microsoft Word (Word); (4) placing restrictions on Word documents submitted for review by Ms. Paley so they could not be edited, a multi-step process that could not have been done unintentionally; (5) refusing to complete assigned work; (6) refusing to follow Ms. Paley's instructions to make corrections to her work; and (7) spreading unsubstantiated office gossip to new employees. SAppx. 10, 40. In its final decision, the Board described Ms. Ferrell's conduct as "confrontational, aggressive, and disrespectful." SAppx. 40.

In response, Ms. Paley took personnel actions against Ms. Ferrell, starting with an oral admonishment, then issuing a letter of reprimand, and, finally, issuing a fourteen-day suspension. *Id.* Ms. Ferrell retired soon after returning from her suspension. SAppx. 8.

Eight months after her retirement, on September 30, 2020, Ms. Ferrell filed a combined Whistleblower and Prohibited Personnel Practice complaint with the Office of Special Counsel (OSC). SAppx. 12, 60-64. In February 2021, OSC notified Ms. Ferrell it ended its inquiry, and she

had the right to file an Individual Right of Action (IRA) with the Board, which she did.  SAppx. 58-59, 15.

Ms. Ferrell's complaint alleged that HUD took adverse personnel actions against her in retaliation for protected whistleblowing activity and one protected activity.  She recited four purported disclosures of whistleblowing activity protected under the WPA and WPEA by disclosing (1) an inappropriate relationship between two co-workers to a supervisor; (2) an improper hiring to her supervisor, HUD's Inspector General (IG) and OSC, and HUD's Assistant Secretary; (3) the improper alteration of a personnel form related to a co-worker's promotion potential to OSC; and (4) the improper selection of her new supervisor to OSC.  SAppx. 15.  She also alleged that her anonymous complaint to HUD's Office of the IG was protected activity.  SAppx. 15-16.

The administrative judge assigned to Ms. Ferrell's appeal suspended the case proceedings in June 2021 for thirty days pursuant to 5 C.F.R. § 1201.28, which permits an administrative judge to make two such suspensions.[2]  SAppx. 125.  Although the administrative judge originally scheduled the hearing for late August, it had to be cancelled and rescheduled due to the administrative judge having an unavoidable emergency.  SAppx. 127-30, 144.  Following the hearing cancellation, Ms. Ferrell filed a motion, which took issue with the administrative judge's rulings on evidence and witnesses throughout the appeal and requested her appeal be moved to a different administrative judge in a different region.  SAppx. 149-53.  The administrative judge denied Ms. Ferrell's venue transfer

---

[2]    5 C.F.R. § 1201.28(a) provides: "The [administrative] judge may issue an order suspending the processing of an appeal for up to 30 days.  The judge may grant a second order suspending the processing of an appeal for up to an additional 30 days."

request since MSPB rules do not allow cases to be transferred to a different venue. SAppx. 162. The administrative judge also denied Ms. Ferrell's request for a new administrative judge because she failed to make a substantial showing of bias, which is required to disqualify a judge. SAppx. 162-65. Further, in denying Ms. Ferrell's request for a new administration judge, the order expressly noted Ms. Ferrell had the right to seek an interlocutory appeal of that decision. SAppx. 165.

The hearing was rescheduled for early October, when Ms. Ferrell was given the opportunity to present her witnesses and evidence. SAppx. 186-90. In early November, the administrative judge issued a second order suspending case proceedings for thirty days pursuant to 5 C.F.R. § 1201.28. SAppx. 191. Consequently, Ms. Ferrell filed three documents in response variously objecting to (1) the second suspension, (2) the procedures of the October hearing, (3) the rulings by the administrative judge regarding witnesses and documents, (4) the perceived technical and procedural errors during the October hearing, (5) the alleged bias by the administrative judge, and (6) the perceived unfairness in the appeal process. SAppx. 193-236. Regarding the second suspension in November, Ms. Ferrell argued—as she does in this appeal—that the cancellation of the August hearing constituted a suspension, making the November suspension the third suspension, even though 5 C.F.R. § 1201.28 only allows for two suspensions.[3]

---

[3] Ms. Ferrell also contends there was a fourth case suspension since the administrative judge delivered the initial decision on December 20, 2021, which was eighteen days after the conclusion of the November suspension on December 2, 2021. Informal Reply Br. 2 [ECF No. 54]. Ms. Ferrell does not point to any support for the contention that an initial decision must issue immediately after a case suspension. She also does not identify any evidence that all

The administrative judge issued the Board's initial decision on December 20, 2021, concluding that Ms. Ferrell failed to prove she was entitled to whistleblower protections for the disclosures she identified, and that the claim related to her anonymous complaint lacked merit. SAppx. 7-50. Thus, she was not entitled to her request for corrective action, and the Board denied her appeal. *Id.* The Board's initial decision became its final decision on January 24, 2022. SAppx. 42-43.

Ms. Ferrell timely filed a petition for review in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our authority to review a final Board decision is limited by law. We may not set aside a final Board decision unless we determine it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c); *see also Bridgestone/Firestone Rsch., Inc. v. Auto. Club de l'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

---

activity in her case was suspended between December 2 and 20, 2021, rather than being ordinarily processed.

Substantial evidence supports the Board's conclusions that Ms. Ferrell's disclosures were not protected disclosures and her other protected activity was not a contributing factor in any personnel action.

A protected disclosure under the WPA and WPEA is a disclosure of information that the individual reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health or safety. 5 C.F.R. § 1209.4(b). The test to determine whether a putative whistleblower has a reasonable belief is an objective one: could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence one of the categories of wrongdoing protected by the WPA and WPEA. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). The reasonableness of the disclosure is based upon what the employee knew at the time of the disclosure, not whether later information may have established the reasonableness of an earlier disclosure. *Reardon v. Dep't of Homeland Sec.*, 384 F. App'x 992, 994 (Fed. Cir. 2010). In the event there is a protected disclosure, the inquiry moves to whether the protected activity was a contributing factor in the challenged personnel action. 5 C.F.R. § 1209.4(d).

First, substantial evidence supports the Board's conclusion that Ms. Ferrell failed to establish she reasonably believed she was reporting wrongdoing covered by the whistleblower statues with respect to an alleged relationship between coworkers because Ms. Ferrell did not establish she reasonably believed they were in said relationship and, further, failed to establish she reasonably believed said relationship violated agency policy, rule, or regulation, or that it violated government ethics regulations. The Board found there was no evidence to support Ms. Ferrell's claim the two coworkers were living at the same address at the time she made the disclosure and, even if there was

such evidence, cohabitation alone does not imply an improper relationship. SAppx. 19. All evidence Ms. Ferrell presented to support her belief the two coworkers were cohabitating was obtained years after her disclosure. SAppx. 19. As a result, the evidence could not support her belief the two coworkers were in an inappropriate relationship at the time she made the disclosure. Instead, the evidence showed Ms. Ferrell's belief was based on unsubstantiated office rumors, which are not sufficient to form a reasonable belief. SAppx. 20. Further, because a reasonable person would not have believed that the alleged relationship violated any government policy, the evidence showed that Ms. Ferrell did not have a reasonable belief that she was reporting wrongdoing. SAppx. 22-28.

Second, substantial evidence supports the Board's conclusion that Ms. Ferrell's disclosure of an improper hiring was not protected whistleblower activity because a reasonable person would have known no wrongdoing occurred. Ms. Ferrell's belief that the candidate in question was not eligible for the program under which they were hired was incorrect. SAppx. 28-29. The evidence showed a reasonable person would have simply checked the eligibility requirements and discovered the candidate was in fact eligible and, thus, known there was no wrongdoing. SAppx. 29. Further, Ms. Ferrell's allegations as to the candidate receiving preferential treatment were baseless, without factual support, and contradicted by reliable testimony and record evidence. SAppx. 29-30.

Third, substantial evidence supports the Board finding that Ms. Ferrell's disclosure of the improper alteration of a personnel form related to a co-worker's promotion potential was not entitled to whistleblower protection because a reasonable person would not have believed wrongdoing occurred. Ms. Ferrell did not provide any evidence the error on the personnel form was anything more than a genuine mistake. SAppx. 31-33. There was no evidence to support a motive to make the error on the form, no evidence the

person accused of making the improper alteration had the ability to make the alteration, and no evidence the error led to any improper benefit. *Id.* In fact, the evidence presented on this issue "erode[d] any reasonable belief that any illegal or improper reason caused the error[.]" SAppx. 33.

Fourth, substantial evidence also supports the Board finding that Ms. Ferrell's disclosure concerning the improper selection of her new supervisor to OSC was not entitled to protection under the whistleblowing statutes because, again, there was no evidence to support a reasonable person's conclusion wrongdoing occurred. Ms. Ferrell did not present evidence to explain, at the time she made the disclosure, what facts led her to conclude she was reporting agency wrongdoing. *Id.* All evidence Ms. Ferrell presented to support the claim she learned after the disclosure, meaning it could not have supported Ms. Ferrell's belief at the time of the disclosure. SAppx. 33-34. The Board concluded Ms. Ferrell's belief there was wrongdoing was based solely on Ms. Ferrell's application and non-selection for the same position, which is insufficient for the disclosure to get whistleblower protection. SAppx. 34.

Although the Board did find Ms. Ferrell's anonymous complaint to HUD's Office of the IG in 2019 was protected activity under 5 U.S.C. § 2302(b)(9)(C), substantial evidence supports the conclusion that this could not have been a contributing factor in any personnel action. There was no evidence anyone alleged to be responsible for any personnel action was aware that Ms. Ferrell was the source of the anonymous complaint. SAppx. 36-37. Starting with Ms. Ferrell's non-selection for the supervisory position, the anonymous complaint was not made until *after* the selection panel made its decision. SAppx. 37-38. Therefore, it would have been impossible for anyone on the panel to have taken retaliatory actions regarding that personnel action based on the anonymous complaint. *Id.*

Moving to HUD's disciplinary actions against Ms. Ferrell, there was extensive credible evidence to support these personnel actions. SAppx. 37. The disciplinary actions were supported by testimony as to Ms. Ferrell's resistance to constructive criticism, her prior violation of her roles and responsibilities, falsifying dates on documents to make it appear she met deadlines for the completion of work, purposefully refusing to comply with instructions on how to submit work in an appropriate format, falsely claiming not to know how to operate Word, placing restrictions on Word documents submitted for review by Ms. Paley so they could not be edited, a multi-step process that could not have been done unintentionally, refusing to complete assigned work, refusing to follow Ms. Paley's instructions to make corrections to her work, and spreading unsubstantiated office gossip to new employees. SAppx. 10, 38-40. Thus, substantial evidence supports the Board finding HUD had valid reasons for taking disciplinary actions and the facts were not so lacking to infer any retaliatory intent. SAppx. 41.

In addition to her protected disclosure allegations, Ms. Ferrell points to several other matters as proof that the Board's final decision was "obtained without procedures required by law, rule, or regulation having been followed." 5 U.S.C. § 7703(c).

Ms. Ferrell argues the Board's decision warrants reversal because (1) the administrative judge suspended the case more than two times in violation of 5 C.F.R. § 1201.28, which allows for only two suspensions; (2) there was judicial bias against her as a pro se litigant; (3) she did not receive copies of the hearing recording on CD and hearing transcript from the administrative judge; and (4) there are issues regarding her claims of retaliation for her prior EEO complaints, union activity, and discrimination based upon race, sex, and disability.

First, the administrative judge only suspended the case two times: first in June 2021 and second in early November

2021. SAppx. 125, 191. The cancellation of the August hearing and the eighteen days in December 2021 were not suspensions under 5 C.F.R. § 1201.28(a). Further, in an IRA appeal before the Board, there is no statutory requirement the appeal be concluded by a particular deadline. 5 U.S.C. § 7701(i)(4); 5 C.F.R. § 1201.11.

Second, there is no evidence of judicial bias or that the administrative judge did not interpret Ms. Ferrell's arguments in the most favorable light. While an administrative judge should interpret a pro se litigant's arguments liberally, a litigant's pro se status does not excuse the ultimate failure of their case. *See Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). The record reflects the administrative judge in this case followed the recommendations of the MSPB's Judges' Handbook, was patient when handling Ms. Ferrell's filings that needed correction, provided Ms. Ferrell full opportunity to question witnesses for over nine hours during two hearing days, and produced a comprehensive thirty-six-page opinion that thoroughly examined the evidence Ms. Ferrell presented. Moreover, Ms. Ferrell waived any request related to disqualifying the administrative judge by not filing an interlocutory appeal following denial of her motion. *See* 5 C.F.R. § 1201.42(c).

Third, Ms. Ferrell received all that she was entitled to regarding hearing recordings and transcripts. "Copies of recordings or *existing* transcripts will be provided upon request to parties free of charge." 5 C.F.R. § 1201.53(c) (emphasis added). Audio recordings are already in Tabs 59 and 60 in her MSPB appeal file, which she can access online. SAppx. 6. If Ms. Ferrell wanted to have a CD made of the hearing recording, her request should go to the MSPB Office of the Clerk of the Board, not the administrative judge. *See* SAppx. 308-09. Regarding transcripts, "[a]ny party may request that the court reporter prepare a full or partial transcript, *at the requesting party's expense. Judges do not prepare transcripts.*" § 1201.53(b) (emphasis added). Hearing transcripts are not automatically created

during the MSPB appeal process.  They are not already "existing," meaning Ms. Ferrell is not entitled to a copy of them free of charge.  If Ms. Ferrell would like hearing transcripts, she must pay for them as the law requires.  Further, the administrative judge is not the appropriate party to contact for this request.  *See* SAppx. 309-12.  If Ms. Ferrell wants hearing transcripts, she must contact the Office of Regional Operations' Supervisory Paralegal.  *Id.*

Finally, Ms. Ferrell attempts to litigate claims of retaliation for her prior EEO complaints, union activity, and discrimination based upon race, sex, and disability.  However, allegations of retaliation for exercising a Title VII right do not fall within the scope of the WPA or WPEA and are not the proper subject for inclusion in an IRA appeal.  *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1329 (Fed. Cir. 2020).  Thus, these claims are outside the Board's IRA jurisdiction, and, consequently, outside of our jurisdiction on this appeal.  *See* SAppx. 41-42.

CONCLUSION

After careful review of Ms. Ferrell's briefs on appeal, the record of the proceedings before the Board, and all Ms. Ferrell's arguments, we are unable to discern any material error of fact or law, or abuse of discretion in the Board's decision.  We therefore affirm the Board's final decision.

**AFFIRMED**

COSTS

No costs.